# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PAUL G. ZARTER,

    Petitioner,

    v.                                        Case No. 12-CV-1189

WARDEN MICHAEL DITTMAN,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT
## OF HABEAS CORPUS AND DISMISSING CASE

      The petitioner, Paul G. Zarter ("Zarter"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Zarter was convicted of one count of repeated sexual assault of a child and one count of sexual intercourse with a child age sixteen or older. (Habeas Petition at 2, Docket # 1.) He was sentenced to sixteen years of imprisonment followed by fourteen years of extended supervision on the first count and nine months imprisonment on the second count, to be served concurrently. (*Id.*; Respondent's Br. at 2, Docket # 14.)

      The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.). The parties have briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

      A Waushara County jury convicted Zarter of one count of repeated sexual assault of a child and one count of sexual intercourse with a child age sixteen or older. (Docket # 1 at 2.) Subsequently, Zarter filed a motion for postconviction relief pursuant to Wis. Stat. § 809.30 and

§ 974.02. (Answer to Habeas Petition ("Ans."), Ex. 10, Docket # 12-11.) Following briefing, the circuit court held a hearing and ultimately denied Zarter's motion orally and by written order. (Ans., Ex. 12, 13, Docket # 12-13, 12-14.) Zarter appealed his conviction and the circuit court's order denying his motion for postconviction relief to the Wisconsin Court of Appeals. (Ans., Ex. 14, Docket # 12-15.) The court of appeals affirmed the circuit court's judgment and conviction. (Ans., Ex. 17, Docket # 12-18.) Zarter then filed a petition for review with the Wisconsin Supreme Court which was denied. (Ans., Ex. 18, 20, Docket # 12-19, 12-21.) Zarter filed the instant petition for writ of habeas corpus on November 26, 2012. (Docket # 1.)

## STANDARD OF REVIEW

Zarter's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376 (2000). In reviewing the merits of a petition for habeas relief, "[t]he relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). In this case, it is the decision of the Wisconsin Court of Appeals that is at issue.

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally

plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). The petitioner bears the burden of proving that the state court's application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

## ANALYSIS

Zarter asserts several related grounds for relief. First, he argues that his rights under the Sixth Amendment were violated in three ways: (1) his pretrial counsel were ineffective for failing to investigate and interview potential witnesses; (2) he was denied his right to counsel at trial; and (3) he was denied his right to secure and confront witnesses. Second, he argues that he was denied due process because he had insufficient time to prepare for trial. I will address each in turn.

*1.     Ineffective Assistance of Pretrial Counsel*

Zarter argues his pretrial counsel were ineffective for failing to investigate and interview potential witnesses and failing to contest the government's motion to exclude evidence of the victim's sexual history as falling under an exception to the "rape shield" law.[1]

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Zarter must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir.1988) (citing

---

[1] Wisconsin's "rape shield" law is found at Wis. Stat. § 972.11 and prohibits, with certain exceptions, the introduction of evidence concerning the complaining witness' prior sexual conduct or opinions of the witness' prior sexual conduct and reputation as to prior sexual conduct.

- 3 -

*Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. A reviewing court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. A habeas petitioner bringing an ineffective assistance of counsel claim must show that the state court unreasonably applied *Strickland* in evaluating his claim. *Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007). The state court's application of *Strickland* must be more than erroneous; it must be "objectively unreasonable." *Id.*

In this case, the court of appeals' analytical framework comported with federal law. Although citing to a state case, the court of appeals applied the two part test clarified in *Strickland*. As such, the state court decision was not contrary to Supreme Court precedent. Thus, I turn to whether the court of appeals' application of the law to the facts was unreasonable. In determining that Zarter's pretrial counsel were not ineffective, the court of appeals considered Zarter's argument that counsel provided ineffective assistance by failing to contact any of the thirteen potential witnesses Zarter identified. (Docket # 12-18 at 6.) The court of appeals noted that Zarter made an offer of proof that one of the witnesses would have testified that there were people staying in every bedroom of Zarter's trailer over a Labor Day weekend when the victim alleged sexual activity had occurred, and that it would have been impossible for the victim to have spent a night in Zarter's bed without any family members seeing her. (*Id.*) He would have further testified that the victim was not present at a birthday

- 4 -

celebration and was present for only a limited time during the following weekend, on which dates the victim alleged additional sexual activity occurred. (*Id.*)

The court of appeals further noted that counsel testified at the *Machner*[2] hearing that he went over the proposed witness list with Zarter, one by one, and Zarter told him none of the witnesses were present with him and the victim in the trailer at the time of the alleged sexual activity and that none of them had any specific recollection of details about the alleged dates. (*Id.*) Further, counsel testified that Zarter told him he wanted the witnesses to testify primarily about the victim's prior sexual relationships and drug use. (*Id.*) Counsel believed the evidence would be largely inadmissible and contrary to the defense strategy because even if the witnesses might have some information on sleeping arrangements during a particular weekend, counsel did not want to present any witnesses that might corroborate any part of the victim's testimony or suggest that Zarter and the victim shared a boyfriend/girlfriend relationship. (*Id.* at 6-7.) Counsel also testified that he did not want to alienate the jury by attacking the victim too harshly. (*Id.* at 7.) Counsel wanted to show that Zarter had more of a father/daughter relationship with the victim and to highlight the eight different accounts the victim had given to gently suggest that she fabricated the story out of anger stemming from family dynamics. (*Id.*) The court of appeals concluded that counsel was not obligated to contact potential witnesses just because Zarter wanted him to, without reason to believe they would offer evidence helpful to the defense that counsel reasonably planned to present. (*Id.*)

The court of appeals' holding was not an unreasonable application of *Strickland*. In *Strickland*, while the Supreme Court stated that counsel has a duty to make reasonable investigations, a particular decision not to investigate must be directly assessed for reasonableness in all the

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), sets forth the procedure for evaluating claims of ineffective assistance of counsel under Wisconsin law.

circumstances, applying a heavy measure of deference to counsel's judgments. 466 U.S. at 691. The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. *Id.* The *Strickland* Court stated:

> Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Id.* As the court of appeals noted, Zarter's counsel relied on information Zarter provided regarding the potential witnesses and determined that the information these witnesses would have provided would either be inadmissible or contrary to defense strategy. Based on this determination, counsel conducted no further investigation into these potential witnesses. Zarter has not shown that the court of appeals' decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, nor has he shown that the court of appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. As such, Zarter is not entitled to habeas relief on his ineffective assistance of pretrial counsel claim.

  2.   *Denial of Right to Counsel at Trial*

Zarter further argues he was denied the assistance of counsel at trial when the trial court found that he forfeited his right to counsel through his conduct. Zarter's argument raises two distinct issues: Whether a defendant can waive his right to counsel through his conduct and; what constitutes a valid waiver.

The Sixth Amendment guarantees an accused in a criminal proceeding the right to counsel. *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938). However, the Supreme Court has found that an accused

may waive his right to counsel. *Carnley v. Cochran*, 369 U.S. 506, 515 (1962). The Supreme Court has stated that a waiver "is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 U.S. at 464. A judge determines if there was waiver based upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Id.* The record must show that "an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley*, 369 U.S. at 516.

The Supreme Court recognizes "the enormous importance and role that an attorney plays at a criminal trial," and thus has "imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). However, as the Seventh Circuit has acknowledged, the Supreme Court has not provided extensive direction on the nature of the "rigorous restrictions" and "procedures" that a court must observe before finding a valid waiver of a defendant's right to trial counsel. *Smith v. Grams*, 565 F.3d 1037, 1046 (7th Cir. 2009); *but cf. Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (plurality opinion of Black, J.) ("To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.").

Nonetheless, the Supreme Court has explained that a defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975) (internal quotation and citation omitted). Courts will carefully scrutinize a waiver of the right

to counsel, and will indulge every reasonable presumption against waiver. *Johnson*, 304 U.S. at 464. Regardless of whether the waiver is express or implied, it must be knowing and voluntary. *See id.* at 468; *see also Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

Here, on the question of whether a defendant can waive his right to counsel through his conduct, the parties have not cited, and this court has not found, any Supreme Court precedent specifically addressing whether a defendant can waive his right to counsel based solely on his conduct. However, the *Johnson* Court does state that a court can consider the conduct of the defendant in determining waiver. *See Johnson*, 304 U.S. at 464. The Seventh Circuit has addressed this issue directly and has found that in certain circumstances, a defendant may waive his right to counsel through his conduct. *Grams*, 565 F.3d at 1045; *see also United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001) ("[Defendant] never said he wanted to proceed *pro se*, but a defendant can waive his right to counsel through conduct as well as words.").

In deciding whether Zarter forfeited his right to counsel by his conduct, the court of appeals considered the fact the circuit court made a factual finding that Zarter wished to discharge counsel; Zarter's primary disagreement with counsel was counsel's refusal to pursue a line of defense that would have violated the "rape shield" law; the circuit court repeatedly warned Zarter that if he persisted in frustrating the process and attempting to discharge his second attorney, he would have to represent himself and warned him of the dangers in doing so; Zarter sabotaged his relationship with two attorneys and the appointment of additional attorneys would have the same result; and Zarter was sufficiently competent to represent himself. (Docket # 12-18 at 8.) On this record, the court of appeals upheld the circuit court's finding that Zarter forfeited his right to counsel through his conduct.

Zarter was initially represented by Attorney Steven Smits. During a hearing held on June 17, 2008, the trial court addressed a motion brought by Attorney Smits to withdraw as Zarter's counsel. (Ans., Ex. 2, Docket # 12-2.) During this hearing, the judge informed Zarter that pursuant to the procedures followed by the State Public Defender's Office, should Attorney Smits withdraw as counsel, Zarter would be appointed one additional counsel, but no others. (Docket # 12-2 at 3.) Zarter informed the court that he wished to seek his own attorney and not have a court appointed attorney. (*Id.* at 5.) Zarter told the court that he was "not going to accept [an attorney] through the courts" even if one was appointed to represent him. (*Id.* at 7.) Attorney Smits was allowed to withdraw and Zarter was granted 30 days to retain counsel of his choosing. (*Id.* at 13-14.) On August 5, 2008, the court conducted a status conference in which Zarter indicated he had not retained counsel and would like to have a public defender represent him. (Ans., Ex. 3, Docket 12-3 at 2.) Zarter stated that "I'd like to just, for the record, say that if the attorney does not work with me or the public defender does not work with me a hundred percent to put his time and effort into the case, he will be fired also." (Docket # 12-3 at 3-4.) The court then informed Zarter that "it will be up to you as to whether you want to proceed by yourself, Sir, which I would recommend you not do." (*Id.* at 4.)

Attorney William Lennon was subsequently appointed to represent Zarter. Zarter moved to discharge Attorney Lennon from representing him and on October 27, 2008, the court conducted a hearing on Zarter's motion. (Ans., Ex. 5, Docket #12-5.) Attorney Lennon told the court that Zarter and he disagreed on how the matter should proceed, specifically concerning the "rape shield" law and approaches to attacking the credibility of the victim. (*Id.* at 2.) The court informed Zarter that if Attorney Lennon was discharged, he would not have another attorney appointed to represent him.

(*Id.* at 5-6.) When asked if he understood this, Zarter replied "I understand that. But I need an attorney that is going to do their job." (*Id.* at 6.) The hearing was continued to October 29, 2008. (Ans., Ex. 6, Docket # 12-6.) The court again informed Zarter that if Attorney Lennon was discharged, the court would not appoint another attorney, to which Zarter responded "That's fine." (Docket # 12-6 at 7-8.) The court also explained the "inherent risks" that go along with proceeding *pro se*. (*Id.* at 9.) Specifically, the court reiterated the fact Zarter was charged with two Class C Felonies and conviction on either charge could result in $100,000 in fines and imprisonment of 40 years. (*Id.*) Zarter stated that he understood that proceeding without counsel would be "highly detrimental" to his interests. (*Id.* at 10-11.) The court further explained that Zarter would be subject to the same rules of evidence and procedures as an attorney. (*Id.* at 11.)

Zarter stated that he believed Attorney Lennon failed to investigate witnesses who had statements as to his innocence. (*Id.* at 12.) When the court questioned Attorney Lennon on this matter, Attorney Lennon responded that he had discussed the potential witnesses with Zarter and he believed that the witnesses would not help Zarter's defense. (*Id.* at 13.) The court determined that Attorney Lennon should continue to represent Zarter, despite "Mr. Zarter's best efforts to obstruct those efforts." (*Id.* at 23.)

During the pretrial conference on November 11, 2008, Attorney Lennon told the court that Zarter planned on expressly requesting that he be allowed to represent himself. (Resp. Br., Ex. 1, Docket # 14-1 at 4.) When the court asked Zarter if that was what he wished to do, Zarter responded "Well, Mr. Lennon doesn't seem to be helping me out in any way. And we just disagree on several things." (*Id.*) The court reminded Zarter of his previous statements regarding the risks of representing himself and once again warned Zarter of the risks of self-representation. (*Id.* at 4-6.) At one point

during the hearing, the court asked Zarter "And you told me you want to represent yourself; is that correct?" to which Zarter responded "Yes. I might as well." (*Id.* at 6.) However, later in the hearing the following exchange occurred:

>The Court: Mr. Zarter, you want to represent yourself; is that correct?
>
>Zarter: Well, I want somebody to represent me.
>
>The Court: That's not an answer to my question. Do you want to represent yourself?
>
>Zarter: No, I don't. I would like an attorney that's going to represent me to [sic] what they are supposed to do.

(*Id.* at 18.) The circuit court then inquired into Zarter's education and work background, finding he had a 10th grade education and worked constructing houses. (*Id.* at 18-19.) The court determined that "Mr. Zarter, through his conduct, his unwillingness to cooperate with, unwillingness to listen to the advice of, and overall unwillingness to abide by the professional direction of both Attorney Smits and Attorney Lennon, has created a circumstance that would constitute a forfeiture of his Sixth Amendment right to counsel." (*Id.* at 28.) On this record, Zarter has not shown that the court of appeals' decision that he forfeited his right to counsel based on his conduct was contrary to, or involved an unreasonable application of, Supreme Court precedent.

Next, regarding the validity of the waiver, the court of appeals found that the trial judge repeatedly made Zarter aware of the dangers and disadvantages of self-representation at multiple hearings. *See Faretta*, 422 U.S. at 835 ("[A defendant] should be made aware of the dangers and disadvantages of self-representation. . ."). The trial judge explained, in detail, the charges Zarter was facing and possible consequences upon conviction, as well as the difficulties with proceeding *pro se*, such as the fact he would be subject to the same procedures and rules of evidence as an attorney. Zarter answered affirmatively when the judge asked him whether he understood that the rules of

- 11 -

evidence would apply to him if he proceeded *pro se*, that he understood that proceeding *pro se* was not advisable, and that he understood the charges and potential consequences he was facing. (Docket # 14-1 at 4-6.) The judge inquired into Zarter's background and experience and found he "is very clearly intelligent, very clearly perceptive, [and] has the ability to rationalize and conceptualize" and was capable of representing himself. (*Id.* at 34-36.) Further, the judge found that Zarter was unwilling to work with his attorney and was demanding his attorney pursue a line of defense the attorney found untenable. The judge stated that although Zarter has a right to determine how his case is tried, "he does not have a right to do so in a manner that the Court would determine very clearly from what has been said would be contrary to the rules of evidence, would be contrary to the rules of procedure, and would involve the presentation of information that is either totally irrelevant to the proceedings or which would be very contrary to his own best interests. . . ." (*Id.* at 33.) Here too, Zarter has not shown the court of appeals' finding that Zarter waived his right to counsel was inconsistent with *Johnson* and *Faretta*.

Finally, on habeas review, Zarter argues the circuit court put the public defender's policy of two attorney appointments and its own calendar above his Sixth Amendment right to the assistance of counsel. (Docket # 13 at 28.) As stated above, the circuit court warned Zarter that should Attorney Smits withdraw as counsel, Zarter would be appointed one additional counsel, but no others. (Docket # 12-2 at 3.) When Zarter sought to discharge Attorney Lennon, the court again informed Zarter that if Attorney Lennon was discharged, the court would not appoint another attorney. (Docket # 12-6 at 7-8.) As the Seventh Circuit has stated, "[i]f you're given several options, and turn down all but one, you've selected the one you didn't turn down." *Oreye*, 263 F.3d at 670. Also, the circuit court expressed concern that Zarter's conduct in relation to his counsel was an intentional and conscious

decision to delay the proceedings and took this into consideration in finding Zarter waived his right to counsel. (Docket # 14-1 at 28-31.) Thus, the circuit court did not put the public defender's policy or its own calendar above Zarter's Sixth Amendment rights; rather, as the court of appeals held, the circuit court properly found Zarter waived his right to counsel through his conduct.

In sum, although Zarter at one point during the November 11, 2008 pretrial conference stated that he did not want to represent himself (after previously stating that he did want to represent himself), a court can consider the conduct of the defendant in determining waiver. *See Johnson*, 304 U.S. at 464. Indeed, the court of appeals found Zarter waived his right to counsel through his conduct. Zarter has not shown that the court of appeals' decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, nor has he shown the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. As such, he is not entitled to habeas relief on this claim.

       3.     *Right to Compulsory Process*

Zarter argues he was denied his right to compulsory process when the circuit court gave him only three days to provide the court with written summaries of the anticipated testimony of witnesses for whom he sought subpoenas.

Where, as here, when the state court has conducted a harmless error analysis, this court's role is to decide whether that analysis was a reasonable application of *Chapman v. California*, 386 U.S. 18 (1967). *Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013). Under *Chapman*, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. An error is harmless if the state proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

- 13 -

*Id.* In applying *Chapman*, the Supreme Court has articulated the inquiry as such: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder v. United States*, 527 U.S. 1, 18 (1999). If the state court reasonably applied the *Chapman* standard, "the federal case is over and no collateral relief issues." *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009). But if the state court unreasonably applied the *Chapman* standard, this court must make an independent decision, applying the *Brecht*[3] standard of "actual prejudice" to determine whether the error was harmless. *Id.*

Here, the Wisconsin Court of Appeals assumed, without deciding, that three days was insufficient time for Zarter to contact his potential witnesses. However, the court of appeals also found any error to be harmless. In making this determination, the court of appeals cited *State v. Kramer*, 2006 WI App 133, ¶ 26, 294 Wis. 2d 780, 720 N.W.2d 459 for the proposition that "[i]f it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error, then the error did not contribute to the verdict, and is therefore harmless." (Docket # 12-18 at 9.) The *Kramer* court cites *Chapman* and *Neder* as the standard for its harmless error analysis. 2006 WI App 133, ¶ 26. The harmless error standard utilized by the court of appeals is consistent with the standard as articulated in *Chapman* and *Neder* and thus the state court's decision was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent.

Nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. The court of appeals considered the fact Zarter provided an affidavit from only one potential witness that he claims should have been subpoenaed,

---

[3] *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht*, a constitutional error is considered harmless unless it can be shown to have had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* at 631.

his nephew. (Docket # 12-18 at 9.) Zarter's nephew averred that there were people staying in every bedroom of his uncle's trailer, as well as in tents outside, over Labor Day weekend in 2005 and this averment may have contradicted the victim's account that people left after a bonfire and did not stay overnight in the trailer. (*Id.*) The nephew did not claim that he himself slept in the trailer the entire weekend, thus the court of appeals determined that "[w]e therefore see little likelihood that the nephew's generalized statement that there were multiple people in and around the trailer on Labor Day weekend of 2005 would have undermined the victim's account that she had sex with Zarter while alone with him in Zarter's bedroom at some point during that weekend." (*Id.* at 10.)

Further, the court of appeals considered the nephew's statement that his uncle had attended a birthday gathering in Oshkosh, at which the victim was not present, on one of the days she alleged sexual activity occurred and found that the statement did not preclude the possibility that Zarter and the victim had sex upon his return, or that she celebrated his birthday with him on a day other than his actual birthday. (*Id.*) Also, the court of appeals found the nephew's assertion that there were people sleeping in every bedroom of Zarter's trailer the weekend following his uncle's birthday was not necessarily inconsistent with the victim's testimony that on a typical weekend people would "flop into" every available bed in Zarter's trailer around two or three in the morning after drinking and partying. (*Id.*) The court of appeals stated that this proffered testimony would not have precluded the possibility that Zarter and the victim were alone in the bedroom at some point prior to other people going to sleep there, or even while there were other people present who were passed out or sleeping heavily. (*Id.*)

The court of appeals weighed the "limited relevance" of the nephew's proffered testimony against the "overwhelming evidence of Zarter's guilt produced at trial." (*Id.*) As part of the

- 15 -

"overwhelming evidence" of Zarter's guilt, the court of appeals considered the following information: the victim's first hand account of their two-year relationship; portions of the victim's diary in which she contemporaneously discussed her feeling for Zarter and his anger over discovering she had a teenage boyfriend; the victim's mother's testimony that her daughter spent a lot of time with Zarter and that, when asked if he was having an affair with her daughter, Zarter told her that they might have had sex while they were both drunk, and if the mother turned him in he would kill himself; the victim's brother's testimony that he saw Zarter and his sister hugging a lot and found them sleeping in the same bed; and the victim's father's testimony that his daughter spent a considerable amount of time at Zarter's trailer and he found them once embracing "like lovers." (*Id.* at 10-11.)

Finally, the court of appeals considered the testimony of Zarter's boss, who recounted that when Zarter learned about the warrant for his arrest, went into a rage and threw items around the work site, stating that he "wasn't going to prison over any bitch." (*Id.* at 11.) The boss testified Zarter told him that the girl did not have a problem with them having sex, it was her mother or others who were making an issue out of their relationship. (*Id.*) Zarter threatened to kill the girl and her new boyfriend and asked his boss for a shotgun. (*Id.*) Based on Zarter's outburst, his boss was so concerned about the victim's safety that he contacted the police. (*Id.*) The victim's mother also testified about a restraining order the victim obtained against Zarter based upon threatening messages Zarter left on the victim's voicemail after learning that she was seeing someone else. (*Id.*) The State produced a police-made copy of some of the threatening voicemail messages Zarter left on the victim's phone. (*Id.*)

Considering the weight of the evidence, the court of appeals found "no reasonable possibility that the jury would have reached a different verdict based on additional testimony regarding sleeping

- 16 -

arrangements on a handful of occasions. Such testimony has little significance in light of the victim's testimony that she and Zarter had intercourse on many occasions over the course of two years . . . the statements that Zarter made to at least two other people that seemed to acknowledge a sexual relationship with the victim, and Zarter's threatening and violent behavior upon learning that the victim was seeing someone else." (*Id.* at 12.) Zarter has not shown that the court of appeals' harmless error analysis was an unreasonable application of *Chapman*. Thus, he is not entitled to habeas relief on this ground.

    4.    *Due Process Right to a Fair Trial*

Zarter argues he was denied his right to a fair trial under the Fifth Amendment because his counsel was ineffective, he was given three days to review motions *in limine* and to draft and file his witness list, and he proceeded to trial "without any assistance of counsel, standby counsel, access to a law library, proper phone service to contact witnesses, a tenth grade education, and a meager six days to prepare a defense." (Docket # 13 at 31.) Citing *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), the court of appeals stated that the Due Process Clause of the Fifth Amendment guarantees a criminal defendant a fair opportunity to defend against the State's accusations at trial. (Docket # 12-18 at 12.) The court of appeals found that Zarter did not ask for a continuance when the court indicated that the matter would proceed to trial; further, the record indicated that Zarter had already reviewed many, if not all, of the discovery materials with counsel. (*Id.*) Further, Zarter used those discovery materials to cross-examine the victim about inconsistencies in her statements, her recantation of an earlier allegation, and her possible motivation to fabricate; Zarter did not identify any additional item of discovery that he was unable to review prior to trial; and Zarter was unable to show prejudice based upon his inability to contact witnesses. (*Id.* at 12-13.)

- 17 -

The court of appeals also found that even if it was error for the court to proceed to trial six days after Zarter discharged counsel and forfeited his right to successor counsel, it was harmless error given Zarter's actual preparation for trial, the overwhelming evidence of his guilt, and his failure to show what he would have done differently with more time. (*Id.* at 13.)

The court of appeals determined that Zarter was given a fair opportunity to defend against the State's accusations at trial and Zarter has not shown that the court of appeals' decision was contrary to clearly established Supreme Court law. Further, even assuming a constitutional error, the court of appeals determined the error was harmless. Zarter has failed to show how this determination was an unreasonable application of *Chapman*. Thus, Zarter is not entitled to habeas relief on this ground.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4).

Jurists of reason could disagree with this court's resolution of Zarter's Sixth Amendment claim that he was denied the right to counsel at trial when the court of appeals found Zarter waived his right to counsel through his conduct. Jurists could conclude that this Sixth Amendment issue that Zarter has presented in his habeas petition is adequate to deserve encouragement to proceed further.

Thus, the court will grant a certificate of appealability on the following issue: whether Zarter's Sixth Amendment right to counsel was violated when the court of appeals found that Zarter waived his right to counsel at trial through his conduct.

However, Zarter cannot demonstrate that reasonable jurists would find this court's assessment of Zarter's remaining claims debatable or wrong. First, as to the ineffective assistance of pretrial counsel claim, it is not debatable the Wisconsin Court of Appeals identified the correct governing legal rule in citing *Strickland*. Further, it is not debatable that the court of appeals reasonably applied *Strickland* to the facts of Zarter's case. Second, as to the compulsory process and due process claims to which the court of appeals applied a harmless error analysis, it is not debatable that the court of appeals correctly articulated the law as stated in *Chapman* and reasonably applied *Chapman* in finding harmless error. Thus, the court will deny Zarter a certificate of appealability as to these claims. Of course, Zarter retains the right to seek a certificate of appealability from the court of appeals on these claims. *See* Fed. R. App. P. 22(b).

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** on the following issue: whether Zarter's Sixth Amendment right to counsel was violated when the court of appeals found that Zarter waived his right to counsel at trial through his conduct;

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** on Zarter's ineffective assistance of pretrial counsel claim, compulsory process claim, and due process claim;

- 19 -

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of July, 2013.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge
